We are now recording. Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honors, the final case on the docket today is 2-22-0110, the People of the State of Illinois Plaintiff Appellee v. Kendall Morrison, Defendant Appellant. Arguing on behalf of the Appellant, Ms. Elena B. Penick. Arguing on behalf of the Appellee, Ms. Jalyn Slaughter. Thank you. Ms. Penick, you may proceed. Thank you. Good afternoon. May it please the Court. My name is Elena Penick, appearing on behalf of Defendant Appellant Kendall Morrison. There's no question that Morrison is guilty of resisting a peace officer in this case. Rightly or wrongly, when Morrison, a Black man, was approached by police in a semi-rural neighborhood that night, he was very focused on guarding his own autonomy. And so, despite knowing Scott Hogan was a police officer, he ignored Hogan's repeated verbal commands to stop. He pulled away when Hogan tried to go hands-on, as he called it, and he continued that same pattern of resistance when Sheriff's Deputy Michael Danico got involved, swatting his hand away. When the officers then made the decision to take the arrest to the ground, again, as they called it, Hogan threw his weight into the lower half of Morrison's body while Danico tackled the upper, and Morrison's instinct for self-protection continued as he flailed and kicked and made contact with Hogan's chest in the process. Counsel, is there a, I mean, practically speaking, isn't there a difference, notwithstanding his concern for his own safety, of pushing a hand away and kicking someone? Well, I think in some cases there might be, but as far as we know from the testimony here, there really isn't much difference. I mean, the description of pushing the hand away is very clearly a deflection. You know, it's not a lashing out or an aggressive sort of maneuver, it's self-protective. But even the kicking, we don't know anything about how it was accomplished other than that it happened while they were trying to physically restrain him. And so, you know, I think in the Hill case, you have an example of how, of the court recognizing that kicking is not necessarily an insulting or provocative act, that it can be done in just a self-protective manner. All right, well, let's then add what happened here. That in addition to pushing the hand away, which wasn't done aggressively, at least according to the testimony, as he's down kicking, he's saying certain things that don't necessarily reflect that he's happy. Right. Well, I think the key here is, you know, we have physical conduct that's clearly resisting and we have profanity. And so you can ask yourself, is is that all that aggravated battery requires is like an act of resistance plus, you know, cursing. And I think I think it shouldn't. You know, this is a this is a class two offense. And if ever there were grounds to hold the state more firmly to its burden of proof, it would be for an offense that by definition arises from vastly unequal power dynamics. And so you've got somebody spouting off as sort of a visceral reaction to a perceived threat to his autonomy. And that shouldn't be enough to transform this self-protective physical contact into a knowing insult or provocation. I'm sorry. I'm sorry, Justice McClaren, you go first. You use this term and I don't recall hearing it before, at least not in this context. And I'm trying to figure out what his autonomy is. Could you be a little bit more specific? Are you talking about a distance within one inch of every surface of his body? I'm not talking about anything that specific. I mean, I think bodily autonomy, bodily integrity, personal space. They're kind of broad concepts, some of which can go the other way. Right. Like the officer's autonomy is threatened when maybe they're jabbed at. So it's but here we've got them trying to restrain him, trying to detain him. And he you know, he doesn't have the right to stop that. But that doesn't mean he's happy about it. So he is trying to stop them from getting in his space. Well, you also said something about it. The action seems to be in connection with resistance. And my understanding of the battery is that it is independent of a condition of resistance. In other words, a person can be battered without resistance, especially if the battery happens from behind and the victim has no knowledge of its impending nature. And so I'm I'm trying to, I guess, suggest to you that it's one thing to block a blow from an officer or block a hand or some appendage of an officer. But it seems like the testimony or the evidence was something more than mere blockage, that there was some movement towards the police officer. Am I misunderstanding that? Is my perception incorrect? Are you referring to the contact with Danico? I think we can all agree that kicking is an affirmative act. Well, to be clear, kicking is an affirmative act, but not one in this case that was committed with, you know, conscious awareness of the insulting or provoking nature. But to get back to the hand strike. I'm sorry. The converse of what you just said is, is that there are such things as friendly kicks or kicks that aren't insulting or provocative. The fact that he's saying things that would be considered either vulgar or obscene may or may not have some adverbial or adjective purpose, but the concept of a friendly kick, to me, only fits in football with an onside kick. That may be a friendly kick, but I can't think of anything else that would be per se friendly. Respectfully, I don't think there's anything in my brief that suggests that friendliness is the standard we're driving for here. The issue is whether or not this intentional contact was done with a conscious awareness of its insulting or provoking nature. To put it in the opposite of friendliness is really raising the bar much beyond what makes sense in this case. The state has a burden of proof. They have to prove not only that there was physical contact, but that it was done with conscious awareness that it was insulting or provoking. And I would argue there are two components to that type of awareness, one being Morrison's actual state of mind. And I think the Jackson case bears that out. That's a case where no one's talking about friendliness or not. They're talking about their mental state, whether they're really in a place to appreciate the impact of their contact. It was a case where he was kicking officers with flashlights and he couldn't necessarily see where the officers were. It could be argued that where he was flailing or kicking, he didn't have any objective knowledge that where his feet were going to come into contact with somebody as opposed to a situation where it is beyond a reasonable doubt that there is sufficient indicia of light and trajectory and knowledge that the contact is most highly probable. Well, first of all, I think you may be referring to the Hill case. That was the one where he was sort of backed into a corner and doing a bicycle kick in the darkness. But, you know, the fact that there's light or not light, that might be relevant to whether or not he knows his movements are making contact. But we're not really arguing that he doesn't know he's making contact. We're arguing the contact wasn't made with awareness of its insulting or provoking nature.  Jackson, even though it has some arguably bad language about how everyone knows kicking is bad, also recognizes that you have to look at the mental state of the person committing the physical act. And so here, this is a man who does not want to be arrested. You know, he's already had a taser fired in his direction. Can I interrupt, please, because I was involved in a case with Judge Burkett and Catherine Zinoff, where the holding of the court was that the defendant was not guilty of battery, because the victim was his wife, who said repeatedly, both at the time of the pushing and at trial, that she was not insulted or provoked. And we found as a majority, with Justice Zinoff dissenting, that based upon the evidence, the perspective of the trier of fact was incorrect because it wasn't what third parties thought were insulting or provoking. The touchstone is whether or not the victim thought it was provoking. And there were cases cited about whether or not somebody taking their knee or their chair and pushing it into the back of a woman was a battery. And the case law said that, yes, it was, because she perceived it to be, and it didn't relate at all to comparing or determining what the intent of the defendant was. And so, would you explain to me the, are you telling me that there are two people that have to make, have the intent, one is the perpetrator and the other is the victim, insofar as insulting and provoking are concerned? Well, I, what I'm telling you is that it, well, first of all, it depends very much on the facts of each case. We're not arguing here that the officers were not insulted or provoked, you know, maybe they were insulted, maybe they were provoked. But that doesn't mean that there's no additional burden to show conscious awareness on the defendant's part of the nature and result of his conduct. And, you know, the officers, it's relevant when we talk about, like, whether or not the contact would typically be viewed as insulting, like, so maybe the officers were insulted because they don't like to be disobeyed. But to be fair, you know, Morrison's attempt to thwart his own arrest, however misguided it was, wouldn't typically be viewed as an affront to anyone's personal dignity. You know, People v. Boyd suggests that the elements of affronting personal dignity is really, you know, like when you're spitting in someone's face or jabbing them in the sternum or whatever, it's kind of the magic sauce that transforms otherwise trivial physical contact into a battery. And Boyd suggests that physical contact is not a battery if one would not expect it to insult an ordinary and not unduly sensitive person. So here, where Morrison's physical acts were consistently geared towards self protection, one wouldn't necessarily expect them to be taken as insults. I would argue that in a way, finding sufficient proof of knowledge in this case would be tantamount to finding that officers are known to be thin skinned, you know, a quasi strict liability standard for physically interacting with law enforcement, but one that undermines the state's burden of proof. But Miss Penick, as he's kicking, and I'm just going to talk about the kicking at this point, but as he's kicking, he is clearly unhappy. He's knowing he's kicking, and he's saying to the officer, fuck you, bitch. It's hard for me not to believe that his actions are intentional, or without knowledge as he's doing that and saying that simultaneously. I mean, I think you have to consider how prevalent profanity is in our culture, you know, you represented in a comic strip by just a bunch of random characters. It almost doesn't matter what he's saying. He's upset. He's feeling threatened, right? He's feeling threatened, but he is turning that around to the officers who aren't thin skinned, and I don't think if we found that this was correct, that they would be thin, you know, that they're thin skinned. There, if I look at your lead page, your statutes involved, and it's a very good outline of where you're going. You've got the aggravated battery, you got the peace officer, so that fits. When committing a battery, knowingly, without legal justification, by any means, makes physical contact of an assaulting, and then you go to knowledge. If you just pin your arguments into those three sections, and listen to what's being said at the time of the physical activity, it's really hard for me not to see how this is an aggravated battery to a police officer, causing insulting or provoking behavior. I think that the insult or the provocation, or at least the knowing insult or provocation, has to tie to the physical contact, and so you can say, yeah, he's spouting off, and he's cursing and upset, but I'm sorry, may I just finish this thought? But does that transform the physical contact itself into an insult or provocation, similar to spitting in someone's face? I don't think it does, because he's really just trying to get them to leave him alone. But he also knows from his prior history that that's not going to happen. He has a history. Well, that might speak to the ultimate futility of what he's trying to do, but it doesn't turn it into a battery. And so, because the state failed to sustain its burden of proof in this case, we ask that you reverse his convictions for aggravated battery of a peace officer outright. Thank you. Any other questions? No, thank you. Ann? Thank you. I have a question, maybe. What if there had been bodily harm committed in this scenario? Would that make any difference? Yes, I would argue it would. But here, the charge was based on contact of an insulting or provoking nature, and that had to be knowing, and so that mens rea proof is lacking. Well, if he didn't know that he was committing a battery that would reasonably result in harm, wouldn't that seem to be a non-battery as well? Because in the first instance, you're arguing that insulting behavior is not indicative of intent. Even though the definition that Justice Hutchinson presented, it would seem to be to the contrary. But in the other instance, you have implied intent based upon the fact that there was harm done. And how do you equate that when, unless a defendant knows that they are reasonably going to cause harm, how could that be grounds for a conviction for aggravated battery? Well, I mean, the phrasing for the bodily harm versus insult and provocation in the battery statute is a little bit different. You know, one has causing bodily harm and the other is making physical contact of a certain nature. And the nature here is kind of result-oriented. So the case law seems to look more towards the definition of knowledge in 4-5b that says, you know, you have to be consciously aware that that result is practically certain to be caused by your conduct. So you're changing your mind slightly or your argument from the first answer, based upon what I asked you relative to intent being imputed by harm or lack thereof? I'm not aware that I'm changing my answer, but maybe I'm not understanding the question. Well, if you kick somebody in the groin and they lose a testicle, would you deem that knowingly kicking somebody in the groin would reasonably result in a loss of a testicle? Or are you saying that unless the person knows, the defendant knows that kicking someone there isn't going to probably result in that harm, then this really wasn't an aggravated battery. And your latest response would seem to suggest that, yes, it was. So if he, for instance, made contact with a defendant, and the contact was that the victim fell on the ground and broke or smashed an elbow, would that be, quote unquote, an aggravated battery? I think the point I'm trying to get to is intent is not determined by the nature of the injury. The intent is determined by the circumstances, and whether or not it is either by bodily harm or otherwise is determined by the nature of the damage or injury and not intent. So you're arguing, correct me if I'm wrong, that you're conflating the quantum of or nature and extent of the injury with intent. Well, I mean, the language in the battery statute about insulting or provoking speaks of the nature of the contact. And the nature of the contact is in part born out of the defendant's own intent, maybe, and also kind of a societal expectation of what is insulting or provoking behavior. So I think, you know, context is relevant and the nature is relevant. Kicking someone in the groin is definitely a battery. I'm not sure how else to respond, but. Okay, I have no other questions. Do the panel have any other questions? I do not. Okay, thank you. You'll have an opportunity to make rebuttal. Thank you. Okay. Ms. Slaughter, you may proceed. May it please the court, Jaylon Slaughter for the people of the state of Illinois. This court held in People v. Thomas, a person knows or acts knowingly or with knowledge when he is consciously aware the result is practically certain to be caused by his conduct. This court further held in People v. Foltz that the trier effect to consider the context in which defendant's contact occurred to determine whether the touching was insulting or provoking. The context here is that, number one, defendant swatting Officer Dinkle's hand while walking toward him can be seen as provoking. Officers responded to the call due to the fact that there was an allegation that defendant may have been carrying a firearm. When looking at the fact that both officers was aware that he may have had a firearm at the time, and while defendant walked towards Officer Dinkle, as Officer Dinkle and Officer Hogan repeatedly asked him to stop walking and get on the ground, the refusal to comply made the situation provoking. Swatting a hand alone may not be seen as aggressive and it may not be seen as insulting or provoking, but when looking at the swatting of the hand in totality of the circumstances, a rational trier effect can determine that an ordinary person of ordinary sensitivities may be insulted or provoked by that contact. Additionally, this court held in People v. Foltz that we look at the context of the situation in addition to the victim's emotional response to the defendant's contact. We have a clear change in the emotional response for several reasons. First, Officer Hogan decided to escalate the situation from a compliant arrest to deploying his taser. Deploying his taser was unsuccessful and the defendant continued to run away from the officer. At that time, the officer decided to escalate the situation to a full-body takedown. He took two police officers to wrestle defendant to the ground in order to attempt to subdue him. At that point, the defendant decided to kick Officer Hogan multiple times in the chest. We also see an emotional change in the defendant's reaction where Officer Hogan stated, Hey, I want him charged, and hey, he hit me. We also have the context of the situation indicating that both officers were, in fact, insulted and provoked. This court held in People v. Ward that the victim is not required to explicitly testify or state that he or she felt insulted or provoked. However, the state is required to prove that the physical contact was insulting and provoking based on the context of the situation and the victim's emotional response. We also understand that there is a split in the circuit. The Ward Court maintains that we look at the context of the situation and the victim's emotional response. We also have the decision in People v. Thomas which also indicates that we look at the context of the situation. We also understand that Williams Court in the Fourth Circuit states that it is based on the type of contact that occurred in determining whether the physical contact was insulting or provoking. However, under either standard here, we believe that there is sufficient evidence to uphold both convictions for aggravated battery where in looking at the context and in understanding that there was a potential for the defendant to have a firearm on him that the swatting of Officer Dinkle's hand was, in fact, provoking and the kicking of Officer Hogan multiple times in the test can be seen as insulting and provoking. The appellate cites to Hill. However, we maintain that Hill is a completely different legal issue here. In Hill, the issue was whether the instructions to the jury were proper. Hill never stated that if the case was remanded to the trial court that the defendant wouldn't be held accountable for aggravated battery. Additionally, Hill is factually similar from our case as well. In Hill, the defendant was in a small pitch black crawl space where he could not see the officers and there was a light shining in his eyes. In Hill, the defendant kicked for 20 seconds in a bicycle motion. The Hill court stated that it may have not been practically certain that he was aware where his kicks will land. The decision in Thomas is instructive here, where it emphasizes whether the defendant is aware that his blows would be practically certain that they would land. In our case, the officers took down defendant in an open area next to the street on the sidewalk underneath a street lamp. It was well lit and the defendant was fully aware that he was being arrested by two police officers. It is practically certain that the defendant was aware that his kicks would land where Officer Hogan was attempting to hold the bottom half of his body and Officer Dinko was attempting to control the top half of his body. A rational trier of fact could very well establish that defendant was fully aware that he intentionally and knowingly engaged in physical contact of an insulting or provoking nature where he repeatedly kicked Officer Hogan in the chest several times. Our case is more similar to People v. Folks, where this court upheld defendant's aggravated battery charges. In People v. Folks, the defendant pushed the police officer while the police officer attempted to arrest his mother. In Folks, this court held that the trier of fact can consider the context in which defendant's contact occurred to determine whether the touching was insulting or provoking. In our case, we have an even more egregious type of physical contact where the defendant kicked Officer Hogan several times in the chest. We are not doing away with the defendant's swatting of Officer Dinko's hand. However, we believe that when looking at the context of the situation, understanding that the defendant was believed to have had a firearm escalates the fact that he merely swatted Officer Dinko's hand from a non-aggressive contact to an insulting or provoking contact. I have a question. Is it the singular fact that it was a firearm or is it any fact that would give the police probable cause to detain the defendant? Yes, Your Honor. It would be any fact. In this case, the fact that the defendant had the firearm speaks to the context of the situation where majority of our circuit court uphold that we look at the entire totality of the circumstances to determine whether the physical contact was insulting or provoking. Additionally, we have defendant's slurs that he spoke repeatedly throughout the 20 minutes he was being chased and the three minutes he was being subdued on the ground, which also speaks to the mens rea of the statute and indicates that he was fully aware that he was engaging in physical contact that was provoking and insulting. We also have the holding that came down yesterday in People v. Thomas that states a person knows or acts knowingly or with knowledge when he is consciously aware the result is practically certain to be caused by his conduct. The record establishes that the defendant was walking towards Officer Dinko as Officer Dinko repeatedly asked him to stop police get on the ground. The defendant walked towards Officer Dinko and swatted his hand away while yelling several slurs. Rational try or effect can look at the situation and determine that the defendant was practically certain that his physical contact would have been seen as insulting or provoking. We additionally have the fact that while they were on the ground wrestling for several minutes, the defendant kicked Officer Hogan several times. We maintain that a rational try or effect can determine from the situation that the victims were in fact insulted or provoked by this physical contact. The defendant had a full range of motion. They were in a well-lit area and he was fully aware that he was being arrested by two police officers. The defendant did not have any legal justification to protect his personal space or protect his autonomy where the officers were effectuating a lawful arrest. For those reasons, we ask this court to affirm both convictions for aggravated battery. Are there any further questions, Your Honor? Does the panel have any questions? I do not. I do not. I do not. Thank you. Neither do I. Thank you. Ms. Penick, you may proceed with your five minutes of rebuttal. Thank you. Just a couple of points. First, counsel's argument included a number of points that are not really in dispute in this case. You know, there's a concern with whether the officers were in fact provoked and the relevance of the split of authority on case law about that. We're not disputing that the officers were in fact provoked. Our argument is very narrowly tailored to the mental state of the defendant himself and whether or not he had conscious awareness of the nature of that contact being insulting or provoking. Also not relevant to this case, you know, whether or not he believed he was justified, whether or not the officers had authority to detain him based on, you know, the gun, etc., etc. We're conceding they had authority to detain him and that he did not have authority and was not justified to resist. The question is whether or not that resistance alone is enough to satisfy the state's burden for a battery based on insulting or provoking contact. Here we've got physical resistance plus some profanity. Our argument is that should not be enough. Ms. Penick, in an earlier argument today, and you were not present so I'm not saying you should know this, but Justice McLaren asked one of the parties, is the way we figure out how something happens because there's a drone in your head, in your brain, that triggers this reaction and that you know what's going to happen. And of course the answer to that is no, we don't have that option. The only option that we have is what happened and the circumstances surrounding what happened. And so you are seeming to require some, what do I want to say, professional or medical or some sort of testimony that would indicate that your client did intend to provoke or insult. Where is the authority for that? Well, it's not so much that we're looking for, you know, some brain science to say that this is what he intended, you know, that there's some graph that can prove that. The issue is really that the context here, that being him trying to stop them from arresting him and him trying to protect himself, is inconsistent with the idea that he was intending to provoke or insult. Is it always inconsistent that if I'm trying to protect myself, that my conduct is therefore never insulting or provoking? You seem to be establishing that they're very different. Why can't one, why can't the act be both? I think it certainly could be both under the right tracks. But at the same time, the act of resisting shouldn't be automatically insulting. You know what I'm saying? There needs to be a little more. And here he's got, he has a very clear pattern of behavior. He's walking away from the officers. He's, you know, don't touch me. Don't point that at me. Why are you arresting me? It's very self-protective. And so under these facts, and particularly where we don't really even know how this kicking happened, it was, it may have just been kind of like defensive, self-defensive thrashing. That's not enough to say that he was acting with conscious awareness of insulting or provoking nature of this context. Self-defense was never raised here, correct? No, there's no self-defense, but I mean, it's just inherent in the nature of resisting, right? It's not a legal defense, but it is defensive in nature. And the only other thing I'd say is with regard to the Fultz case, you know, the defendant in that case was making a very different argument than we are. In Fultz, the argument was that the officer himself caused the resulting contact and that the officer was not even shown to have been insulted or provoked. So this court had chosen to address knowledge there more or less to a sponte, holding that the jury could reasonably infer that, you know, he knew his conduct was insulting or provoking. But there really wasn't an explanation of how the court got there. And this case places the knowledge mens rea issues squarely before the court and demands a little bit more rigorous analysis on that specific point. And so, again, we ask that you reverse both of his convictions for aggravated battery of a peace officer. Are you done? Yes. Because your time is not up. That's why I asked. If you have any further questions, I'd be happy to address them. Any other questions from the panel? I don't have any. Thank you. None. Neither do I. Thank you for the oral argument. We'll take the case under advisement and render a decision in apt time. Mr. Marshall, will you please close out the proceedings? Yes, sir.